Case No. 18-3057, Scott Fetzer Company v. Zurich American Insurance Company. Argument on the receipt 15 minutes per side. Mr. Melody will take the seat with you. Good morning. My name is David Mallott. I represent the Scott Fetzer Company, the appellant in this case. I would like to reserve three minutes of time for rebuttal. The issue presented in this case is how many occurrences took place arising out of the underlying Thompson lawsuit. Scott Fetzer says there was one occurrence for insurance coverage purposes. Zurich says that there were three occurrences for insurance coverage purposes. More specifically, the issue before this panel is whether Scott Fetzer's alleged negligence, which was essentially a failure to prevent harm to the three victims, was one occurrence or three occurrences. And the significance of the answer to that question is that if there's only one occurrence, then Scott Fetzer is entitled to insurance coverage that would compensate it for the amount it had to pay to settle the Raby claim and the Leslie claim. On the other hand, if there's three occurrences, that means there's three $1 million deductibles, and essentially there's no additional coverage available for Scott Fetzer under this policy. I'd like to focus this argument mainly on the wording of the deductible endorsement. I think the case law is interesting, but I think the wording of this, in this case, sets this case apart from many of the others. And essentially what that deductible endorsement says is that there's a $1 million deductible for each occurrence, and it applies to all sums payable other than for defense costs, resulting from an accident including continuous or repeated exposure to substantially the same harmful conditions, regardless of the number of persons who sustain damages or to whom sums are payable. Now, to break that down a little bit, our view, which we would submit to the panel for consideration, is that the all sums language, the all sums payable, regardless of the number of people, essentially is drafting language by Zurich that was intended to aggregate as many claims as possible under one occurrence, as long as the sums payable resulted from an accident, which I submit as to Scott Fetzer's negligent conduct here, because it was negligence alleged against Scott Fetzer, not intentional, deliberate causing of harm, and as long as the sums payable resulted from continuous or repeated exposure to substantially the same harmful conditions. And I would submit that that also is satisfied in the record here before the court. And I would call the court's attention to the Crystal Thompson and her co-plaintiffs' allegations in the Fifth Amendment petition. There are identical allegations of fault against Scott Fetzer in lots of different ways. Everybody's just assuming here, but it does strike me as kind of intriguing that this kind of intentional conduct on the part of, what was his name, Fields? Fields, yes. Bad guy. Is an accident. I mean, because an occurrence, that's the premise. In the definition of occurrence, it starts with an accident. Yeah, I think I get what you're saying, Judge Batchelder. Nobody's saying that this creates any kind of problem here. No, I don't believe so. I think that, you know, you could definitely, when you're looking at Fields' action, and he's not insured under the insurance contract, you could say, yeah, the guy's a bad guy. He committed, you know, deliberate bad acts and caused deliberate harm. The claim against Scott Fetzer is the alleged person that employed him actually through Krantz Development. To them, the claim is basically negligence, failure to have safety policies. What's negligence in hiring and supervision? Beg your pardon? Negligence in hiring and supervision. Yes. And ordinarily that, I mean, that seems like a strange use of the word accident, but nobody thinks it's strange other than me, so I don't think we probably have to talk about it. Yeah, accident, yeah, it would be fun to debate it, but we've only got so much time. Accident is not defined here, but I take that to mean something that's not intended. In other words, not within the experience. So there's not gross negligence or any other heightened standard of negligence pled here? No, no. I mean, you could get mad because of what happened, okay, but I don't think it was. Well, I mean, it's pretty, I mean, it's just pretty unbelievable, but that's, you know, the way that is it may. Yeah, and I get it. It's pleaded as negligence, that's for sure. I have a couple of background questions. Sure. First of all, there's a lot of reference to this definition of occurrence. To me it reads like gibberish. Each occurrence means what? Each occurrence means for any coverage described in the schedule to all sums. So occurrence means all sums? That can't be right. Occurrence means coverage? Occurrence means schedule? Yeah, I think. It isn't a definition. It's like, I don't know. Well, yeah, I'm happy to say that I didn't write it. How can we get any meaning from it? I wouldn't have written it that way. This is the way Zerk wrote it. I understand, but how can we, how would you read it that it's assuming this is the relevant, like you seem to be relying on it. Yeah, the way. Is it a definition even? It says it's a definition by the heading there, see definitions. And I think, in fairness, you have to read it in conjunction with the preceding page of that policy, which I don't know if this is the right number, 2012-093, in the lower right corner. And what that does, it refers to coverage A, bodily injury, except for occurrences writing out of products completed operations. It's $1 million each, quote, occurrence. So when you read them together, the way I read it, it says that $1 million deductible is for each occurrence and applies to all sums payable. That's how I read it. But it is awkwardly worded. It's not a definition then, right? It's saying when you're talking about occurrence, you should take into account. Well, then you have something that's not a sentence, so I don't know what it means. I agree with you. I agree with you. Let me ask you about what you mentioned, because I was confused about the descriptions of the coverage here. If these had been, apart from the definition of occurrence, let's say there had been several occurrences and they were each, let's say, $3 million or $4 million, how much is to be paid, assuming it's several occurrences? I think it's $2 million. The first million is deducted or retained, right? Yeah. It's $2 million. Then there's $2 million over that, so $3 million in payment would result in $2 million insurance. Yeah. So let's say the plaintiffs in this case had had greater damages, let's say the three, there would have been $6 million of limits available. That's why this is written, I believe, the way it is, because Zurich is trying to limit its exposure here to… Before we get into that, I'm not understanding. Okay. The overall limit? Yeah, $25 million aggregate. So if, for instance, each of these occurrences had resulted in a $2 million settlement, you all would be arguing the opposite positions? Very possible. Well, it's true, though, isn't it? I mean, not that what you would argue, but your interests would impel you to argue the exact opposite. I agree with that. I agree with that. That's interesting. Okay. Yeah, it is. So it's $1 million, then $2 million, then a limit, and the number of occurrences can result in greater liability under the insurance. Yes, yes. And my comment back to Judge Rogers would be to actually the entire panel, is that this deductible endorsement, the way Zurich wrote it, it doesn't limit occurrence to time or place or number of persons. And so I think the panel needs to keep that in mind when they listen to Zurich's argument about, well, this occurred at different times and places. It's like my response is, so what? You could have written the deductible endorsement in a way that said, you know, it's limited to a certain location. It's limited to, you know, there's one occurrence for each victim. That's not how. What does Ohio law require with regard to how we – who gets the benefit of the doubt in reading an insurance policy that is kind of wretchedly written? The policyholder gets the benefit of the doubt. If this panel is of the mind that this deductible endorsement is confusing and not well written, then it's allowed to interpret the policy. And under Ohio law, the definition of ambiguity means if something's not clear or it can also mean if the two parties that have conflicting views have – in that case, the nod goes to the policyholder. If you find here that – Let's say in one case we rule in contra-preferendum, I guess, in favor of the insured, and then in the next – and put that in a published opinion. In the next case, in the same contract, the amounts are different, so the interests are different. Are they stuck with that, or do you rule contra-preferendum again because it's inherently ambiguous? I've thought about that, Judge, and I – here's my view. And I'm not the Ohio Supreme Court. But I think that this deductible endorsement, particularly the way it's being applied here, is exclusionary in nature. And so under the rules of construction, the grants of coverage, the insurer's got to fall within that. But exclusions are interpreted narrowly. So to the extent that – and I think if you fall back just on basic principles here, that this deductible endorsement is exclusionary because they're saying there's only – there's three occurrences, and that's stripping Scott Fetzer – Would you argue that? What's that? You don't make that argument in your brief? I don't think I use the word necessarily exclusionary, but that is the effect. I'm asking a different question, which you say you've thought about it, so I'm curious what your answer is. You just have a few minutes. What if an interpretation – under contra preferendum, this court were to rule, say, for instance, in your favor that this – that there's – that in this type of situation, there's only one occurrence, and then you have the identical situation later, except that the amounts are different. Would you rule contra preferendum the other way, and you get to win both times? Well, if I were a judge, I would be – frankly, I would be consistent with the rulings as an advocate. That's not contra preferendum, then. It seems like under contra preferendum, you would argue you win in both of them. Well, as an advocate, I would. As a judge, would I rule that way? I don't know. Yeah. So back to the point. That looks like – okay. I'll save that for rebuttal. Thank you. Thank you. Good morning, Your Honors. Excuse me. My name is Laura Faust, and I'm here on behalf of the Appley-Zurich American Insurance Company. Avoiding my argument for a moment and wanting to answer your question and the questions with regard to the policy itself, the policy language does avoid inconsistencies. There's been no argument with regard to ambiguity. The policy in the deductible endorsement provides that they will pay all sums or it will pay all sums for an accident. That's what we need to look at. After you determine what the accident is and whether it's one accident. Well, that's exactly what I want to talk to you about. It appears that as to Mr. Fields, there are three different situations or incidents. With respect to FEDSER, there's only one. It's act of hiring Mr. Fields. That doesn't vary from any – from one of these women to another. It's the same act. Now, how do you answer that? Certainly. Of course, with regard to Mr. Fields, there are different assaults. Of course there are. But Mr. Fields is not the party to the litigation. To quickly address the question with regard to whether that's an occurrence, there actually is Ohio Supreme Court case law that when you're looking at something like negligent hiring, negligent supervision, vicarious liability, that the acts of the perpetrator do not necessarily apply to the acts of the individual. In this case, with regard to Zurich, to go back to your earlier question, Judge Batchelder, to go back to Scott FEDSER, they are a negligent party but not an intentional actor, so the coverage would apply to the policy. It's not even alleged that somehow his actions might be imputed to FEDSER. That's correct. FEDSER's conduct that is alleged here is different from that of Mr. Fields in his interactions with the three women. Absolutely. And there are three women, three women making allegations with regard to the negligent hiring, negligent training, and failure to warrant. But it's the same act, right? No, it is not, Your Honor. It's a different hiring each time? It is a negligent hiring. He wasn't hired once? He was hired once. However, there are additionally allegations with regard to negligent supervision and failure to warrant, each of which may relate to his original hiring, but they are separate acts. And as the Seventh Circuit said in the Lee v. Interstate case, when you look at duties owed between employer and employee, you partner them up. So with regard to Scott FEDSER and the individual employees, Ms. Raby, Ms. Corby, and Ms. Thompson, all of whom were employees at different times and came into contact with Mr. Fields at different times, the duties of Scott FEDSER arose again. Scott FEDSER failed to supervise Mr. Fields as it related to his conduct with Ms. Raby and his work with Ms. Raby. Scott FEDSER failed to warn each individual plaintiff with regard to Mr. Fields' background and propensities. Each of those acts... The lawsuit also alleged that he was negligently hired in the first place, right? It does. What you're describing supports you, but the lawsuit that was settled incorporates both. But there are separate allegations. I would agree if this was a claim of only negligent hiring. I would have a harder time. But in order to go back to your statements with regard to wanting to keep consistency in decisions and how the policy language is looked at, if we look at the line of cases, even the cases that this Court has ruled on in, say, Babcock and Wilcox, with regard to asbestos litigation. I understand asbestos litigation is different from these types of allegations. However, there is still one act with regard to asbestos litigation, the determination of a company to use asbestos in its products. Well, and here, by analogy, FEDSER could have been said to have made a single decision not to warn any female employees about Mr. Fields. Or it could have made a single decision about how he was to be supervised, and then it was consistent from employee to employee. It turns out in that process he allegedly, and I guess did, victimized three different women. But I don't know that there's any allegation that would support a finding that FEDSER made that decision. He made decisions over and over again in a different manner as to each employee. He made each decision with regard to each employee, and you have to pair the duties according to the Lee v. Interstate case from employer to employee. That is a whole company policy, and there's no evidence that there was a whole company policy in this case, that they were going to make the one decision. Is there any evidence that the company said, well, I'm not going to warn this employee and I'm not going to warn that employee? Isn't there a single decision that there was no need to warn employees? There's no evidence of that in this case. What we have is the Fifth Amendment. Is there any evidence one way or another? No, Your Honor. There's not. But drawing the- This is a contract. This is an insurance contract case dealing with payment of settlements for suits that allege various things. Is that right? That's correct. All right. What do you do in a situation where, accepting the applicability of Lee that you're arguing, that there's a conceptual difference between some sort of preliminary single negligence, like we hired him negligently and it caused, over a period of time, several people to be hurt, sort of like drove negligently and it caused lots of cars to be crashed? That's one of the allegations. And then there's another set of allegations that's along the lines of what you're doing, which under Lee would be completely separable, which would be from this point to this point, you didn't warn this person that this person was- and then another one in a different period of time for a different person, you did a different set of things. What do you do under the insurance contract then when the settlement doesn't say we're settling this part or we're settling that part, it just says we're settling the whole thing? Then you just go into court and you argue, well, this is a settlement of one kind of claim and the other side argues it's a settlement of another kind of claim. What's the contract? We go based upon the language of what the claims were settled, based upon the petition, the Missouri petition, the complaint that was filed by the three individual plaintiffs. That's what controls and triggers an insurance company's obligation. Where that has two claims, one of which under Lee would be unitary and the other which under Lee would be multiple, what's the answer then? If that were the scenario based upon your hypothetical, one would hope that those allegations of the information would be contained within the settlement agreement. In this case, what we have- It isn't. It is not in this case. You are correct. So we have to look- Assume that it's not. We have to look back to case law and the interpretation of case law and the facts of this case. You're saying Lee helps us, but Lee doesn't help us with that hypothetical, right? Lee doesn't help us with that hypothetical, but the Babcock-Wilcox case, the William Powell case does help us. And again, those are asbestos cases. We just do whatever the insurance company says is the thing that they claim. No, you rely upon the language in the insurance policy itself. The insurance policy itself indicates that Zurich will pay for each occurrence all sums payable as the result of an accident. And what Zurich's argument is in this case is that there are more than one accident. It was the negligent- Based on what was settled, but they settled a claim- It was based on what was settled, which arises out of the petition that was filed by the individual plaintiffs that not only alleged the one decision to negligently hire, or allegedly negligently hire Mr. Fields, but then the decisions to negligently supervise him in regard to his relationship to each individual plaintiff. But if they'd only alleged the first of those two things- It may have been a different case, Your Honor, that's correct, but that's not what we have before us. Why, when we look at this lawsuit or law claim that was settled, we just look at the part of the complaint that favors you, when if we could have just as easily looked at the part of the complaint that favors the other, and you say, well, you look at the insurance contract. But the insurance contract just says occurrence. We're just in a circle going back to what's in the- The whole problem is what's an occurrence. I would respectfully disagree that we're looking at the settlement as to what favors only Zurich. Zurich was not involved in the settlement other than oversight, and it agreed to the settlements. What was settled and what is set forth in those settlement agreements is that it was a settlement of all claims. So we must look back to the petitions that were filed in the Thompson complaint, which included negligent hiring, negligent supervision, and negligent failure to train. That were divisible and included some things that were unitary. That's correct, but when you have multiple- If it has something in there that's divisible, we look with that counts. But someone else could argue if there's something in there that's unitary, that counts. But you have to look for a payment overall, since it was not split out. Scott Fetzer didn't split it out to indicate that this was a settlement only of the negligent hiring claims. It was a settlement of all claims. So we must look back to what all claims are. And if this were a negligent hiring case only, there may be an argument that Scott Fetzer is correct. I disagree with that based upon the case law that applies with regard to the asbestos claims because negligent hiring is like the decision of a company to put asbestos in its products. And this court has said that looking at that decision alone is too remote to determine what the occurrences are when you go forward in the case. That's exactly in this case. And in the asbestos cases, every time the company put a product in front of another customer, separate individual customers, a new duty arose. I have to say that the analogy is not really that convincing to me. Let me ask you this. Were there any distinctions alleged in the supervision each plaintiff received? I mean the supervision Mr. Fields received with respect to each individual plaintiff? Not that aware of and not that are on record in this case. So he was hired once. They made a decision not to warn. That arguably is a single decision. And they made a decision that he didn't need supervision. I would disagree that it was one decision not to warn. Ms. Raby's contact with Mr. Fields was from May of 2012. I understand it happened at different times, but there's no indication that the company revisited. There's no indication the company did not. Once they hire a new employee, they must look at all their policies and obligations to that employee. Well, it's going to be determined. Is it going to be determined by the allegations of the complaint with the insurance policy, or is it going to be determined by something else? It would be determined based upon the allegations of the underlying Missouri Thompson complaint in conjunction with the terms and conditions of the insurance policy itself. And the insurance policy defines an occurrence as an accident, an accident. The failure to warn one individual plaintiff is an accident. Scott Fetzer had an obligation with regard to each of these individual plaintiffs to supervise Mr. Fields, and it failed to do so. Each of those equates to a separate accident. Let me ask you this. Do you agree that under these provisions, if the settlements had been for $2 million and there had been various settlements, that your financial interests would be reversed in what you're arguing? No. Why not? I don't understand that. The policy itself provides a $2 million limit per occurrence. That's after the $1 million. That's after the $1 million. With $3 million shown, you would pay $2 million. We would pay $2 million, and there's a $2 million aggregate. So in other words, no matter... $25 million, and you say $2 million. I don't understand. If you look at the declarations page of the policy, it indicates that the coverage that is provided has a general aggregate limit of $2 million under this policy, under the general liability policies that exist. Now, there were other policies that are not part of the record in this case that may have applied but are not at issue with regard to this deductible endorsement. There were a higher than $2 million. So the most you could get under this policy is $2 million. Correct. Period. Correct. For that time frame. Now, there are two policies. I understand the time frame difference. I'm talking about the number of occurrences. So the number of occurrences couldn't work against you the way it could if there were a higher overall aggregate. Is that correct? Correct. So you might, in some other litigation, where you had the same language but a higher overall limit, then counting the occurrences might cut the other way. They might, but I would be bound by the terms and conditions of the policy as to what, in fact, an occurrence is, regardless of the financial interests of the company. When looking at this... The language that an insurance company uses is real hard to figure out, subject to a lot of clever arguments. It sort of puts you in a good position to see which one you're going to argue. The language itself has been interpreted by courts with regard to what is an occurrence, what is an accident. What do you do with this definition here, so-called definition? You wouldn't call that a definition, would you? What are you looking at, Your Honor? I apologize. Each occurrence means? Normally when you have a definition, there's something after the means, which is a noun. The policy... If you look at the policy provisions, the general liability provisions of the policy, there is a definition section that would apply to the deductible endorsement as well, and there is a definition contained therein of an occurrence. And the definition is that an occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Is this the language on page 12 and 13 of the blue brief? I don't know. I don't have the contract in front of me. It says each occurrence means for any coverage described in the schedule to which each occurrence basis applies to all sums payable for other than the LA. Is that the language you're talking about? Subsequent to that, in the actual body of the policy, and I apologize, I don't have the form in front of me as to what the form number is, but the actual body where it sets forth the insuring agreement for the policy, for the general liability policies, there is a definition section. And when you look at the pages that you are looking at, Your Honor, the term occurrences in quotes, that means it's a defined term within the policy. So you look back to the terms of the policy in the definition section. Where I think that I'm looking?  If you look at ID 480 and 589 as well, that provides you the definition. You're saying 480 is not where it says each occurrence means that that is not a definition or it is? The definition is provided at 589, if my chicken scratching on my notes is correct, Your Honor. And it is cited in our brief at page 12. We cite to the deductible endorsement, and then we also cite to the definition of an occurrence contained at page 12 of our brief. So you're not relying on this all, all sums language? That's the language contained in the deductible endorsement. Then you have to look at the definition of an occurrence contained within the policy, Your Honor. You would agree that it would benefit Scott Fetzer enormously to do a better job of drafting its policies? It would benefit, you mean Zurich? I'm sorry, it would benefit Zurich enormously to draft its policies in a way that is more amenable to interpretation by people who speak the language. I think hindsight with regard to insurance policies is 20-20, Your Honor. But however, when you look at any contract, any document, any decision from the court, there's always somebody who's going to question how it's drafted and not drafted. The language of these policies has been interpreted by courts throughout the country. It's accepted by the Departments of Insurance for filing as providing a specific meaning and providing definitions within them. So the only way we'll get better language is if we just say stuff that's ambiguous rather than try to make sense out of it? I believe that the policy language in this case is not ambiguous. However, that has been the resort of some courts when trying to determine what the language of the policy is. There are a lot of ways to interpret that, but you'll see that your time is up. It is up, Your Honors. I would ask that the court affirm the decision from the district court below. Thank you. Thank you, counsel. Just several brief remarks in rebuttal. First, if this panel believes that there is ambiguity in the deductible endorsement, then under Ohio law, the ambiguity should be resolved in favor of the policyholder, Scott Fetzer. Second point, I believe that the – Are you writing that in your brief? Yes, it's in there. It is in there. My thoughts. It's below and in this too. Second, I think that Zurich goes down a rabbit hole when they try to parse out the different types of negligence and call them each occurrences. My view is that the Fifth Amendment petition, and it's stated in there several places, it's a negligent failure to prevent harm to the plaintiff, which includes the hiring, the supervision, and all the other things. The rabbit hole that Zurich would go down in trying to parse this out, just imagine a car accident. I know this isn't an auto policy, but bear with me. The driver runs a red light. That's the act of negligence that results in the accident. That's the occurrence. Yeah, you could say, well, he wasn't paying attention. He didn't look. He was listening to music. He was texting. All those were negligent acts, but the occurrence is the negligence of running the stoplight, and it's unitary. Ms. Faust mentioned the asbestos cases. I mean, frankly, I'm surprised that they weren't arguing that there was more than three occurrences here because the asbestos cases say exposure to each exposure of an injured person resulting from asbestos is an occurrence. And in the Fifth Amendment petition, there were way more than three alleged assaults on these women. Why did she go to three? Well, the three is because there were three victims. She's counting the number of people who were injured, and Zurich actually says that in their brief. It's the bodily injury that constituted the occurrence. That runs directly counter to Ohio law, which says you look at the cause to determine the occurrence, not the effect, which here the effect is the bodily injury. And saying that there were three occurrences because there were three plaintiffs is in complete derogation of saying regardless, you know, in the deductible endorsement, regardless of the number of persons who were injured. Thank you. I ask that. Do you agree that the number of occurrences is up to a 2 million instead of a 25 million limit? It's a little bit more complicated. Not in this case, I don't. There's different aggregates that apply, one for products, one for, I have it here. In the example I gave, if there were a lot of $2 million settlements. I don't believe that. There were three $2 million settlements. She says, well, under this contract, there still would be an overall limit of 2 million. I don't agree with that. There are stated $2 million aggregate limits, one for products liability. This isn't a product liability case. So that wouldn't apply. It's frustrating. We don't even have agreement on what your overall limits are. I agree. Not the issue, I guess. Thank you, Your Honors. Thank you, Counsel. The case will be submitted. Clerk, we'll call the next case.